JOHN D. AND JANICE L. EDWARDS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78657. Filed October 11, 1962.

*John D. Edwards*, pro se.

*Robert H. Elliott, Jr., Esq.*, and *Aaron S. Resnik, Esq.*, for the respondent.

FISHER, *Judge:* Respondent determined a deficiency in petitioners' income tax in the amount of $1,440.47 for the taxable year 1955.

Janice L. Edwards, wife of John D. Edwards, is a party only because she and her husband filed a joint return for the year in question. The issues before us relate solely to the activities of John D. Edwards who will be referred to herein as petitioner.

Some of the issues have been stipulated. The only issues remaining for our consideration concern: (1) Whether petitioner, receiving in 1955 the entire amount due him as a bonus from his employer pursuant to a settlement agreement, is entitled to claim any withholding tax credit for amounts not actually withheld by his employer; (2) the amount which petitioner may exclude as sick pay in 1955; and (3) the deductibility of premiums paid by petitioner for health and accident insurance policies in 1955.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are incorporated herein by this reference.

During the year 1953 petitioner was employed as a structural steel superintendent for the Arthur Fralick Construction Company (hereinafter referred to as the company) at an hourly wage plus a bonus of $1,000 if the construction was completed at a cost less than the estimated $30,000. The construction was completed by petitioner at a cost of approximately $23,000. No bonus was paid to petitioner at that time.

During the year 1954 petitioner was employed as a steel erection foreman for the company at an hourly wage. In addition, he was to receive one-half of the savings below the company's cost estimate for the project.

As the project neared completion it became apparent that the project would be completed at a cost considerably below the original estimate. Petitioner was then discharged from his employment without cause in an attempt to avoid payment of the bonus.

Petitioner filed a workman's lien and sued the company in the King County Superior Court for the amount of the bonuses due, plus an additional $12,000 damages. He received judgment in the amount of $1,000 for the 1953 bonus, and $14,155 for the 1954 bonus, or a total judgment of $15,155. A countersuit against petitioner based upon an unpaid debt resulted in a judgment against petitioner in the amount of $476.18.

Consolidated with petitioner's suit was an action by a coemployee, Ernest Janet, against the company. Janet received judgment in the amount of $13,610. The combined judgments of petitioner and Janet totaled $28,765.

The company considered the possibility of appealing from the judgment recovered by petitioner. It had, however, been awarded a contract for another construction project and in order to obtain a bond as required by the contract it was necessary to dispose of all outstanding litigation. To that end it discussed with its attorney the possibility of settling the judgment with petitioner and Janet. The company's attorney entered into settlement negotiations with the attorney for petitioner and Janet and submitted a memorandum of the company's alternatives, which states, in part, as follows:

*Possible Solutions.*

1. *Immediate Settlement.*

We have offered $22,500.00 and Hunter [attorney for petitioner and Janet] has counteroffered $26,500.00 but stated informally on the phone that he thought his people would go down to $25,000.00.

**2.** *Partial Settlement.*

This would involve a settlement of only the Edwards case which would give us a chance on appeal on the Janet case. Edwards has more personal need of money right now than Janet. Such a course would substantially reduce the threat of a judgment for attorneys' fees on the lien foreclosure and would make it possible to get Manson taken care of immediately.

Petitioner and Janet authorized their attorney to settle their outstanding judgments in the total amount of $24,250. This amount was in settlement of the total liability owing to petitioner and Janet after deduction of the company's judgment against petitioner.

During the year 1955, petitioner received $13,027.21, less the amount of the judgment against him, attorney's fees and other costs. The computation of the distribution of the settlement was made by petitioner's attorney as follows:

ACCOUNTING

Amount of judgments:

| | | |
|---|---:|---:|
| Janet | $13,610.00 | |
| Edwards | 14,155.00 | |
| Edwards | 1,000.00 | |
| | 28,765.00 | |
| Amount of settlement | 24,250.00 | |
| Plus amount of judgment against Edwards | 476.18 | |
| | 24,726.18 | |
| Settlement less than judgments by | 4,038.82 | |
| $13,610 | | |
| $28,765 of difference deductible from Janet | | $1,911.03 |
| $15,155 | | |
| $28,765 of difference deductible from Edwards | | 2,127.79 |
| Janet: | | |
| $13,610 less $1,911.03 | 11,698.97 | |
| less ⅓ attorneys fees | 3,899.66 | |
| | 7,799.31 | |
| Edwards: | | |
| $14,155 less $2,127.79 | 12,027.21 | |
| less ⅓ attorneys fees | 4,009.07 | |
| | 8,018.14 | |
| $1,000 less attorneys fees of $333.33 | 666.77 | |
| | 8,684.91 | |

Total costs:

| | |
|---|---:|
| Depositions | $329. 60 |
| Wernecke | 200. 00 |
| Ronning | 233. 00 |
| Witness fees | 40. 00 |
| Reporter | 44. 10 |
| Judgment fee | 12. 00 |
| Process Service | 61. 40 |
| | 920. 10 |

Note: additional statement received for service fees—$4.20 (½ charged against each).

| | | |
|---|---:|---:|
| Janet: $7,799.31 less ½ costs ($460.05) | | $7, 339. 26 |
| Edwards: $8,684.91 less ½ costs ($460.05) | | 8, 224. 86 |
| Less judgment on note ($476.18) | | 7, 748. 68 |
| Remittance to Janet | $7, 339. 26 | |
| Plus costs advanced and herein charged | 200. 00 | |
| | 7, 539. 26 | |
| Remittance to Edwards | 7, 748. 68 | |
| Plus costs advanced and herein charged | 180. 00 | |
| | 7, 928. 68 | |
| Less balance on divorce | 272. 00 | 7, 656. 68 |

Petitioner received no W–2 form from the company for the year 1955 nor any other notice indicating that the company had withheld any amount for taxes from the settlement paid to petitioner and Janet. The company did not withhold any amount on account of Federal income taxes from the sum paid in settlement of the litigation. The company paid no amount to the Internal Revenue Service on account of withholding on any payment to petitioner in 1955.

Petitioner and his wife filed a joint Federal income tax return for the calendar year 1955 with the district director of internal revenue, Tacoma, Washington. On his original return, petitioner reported the net amount received by him from the settlement after the payment of costs and attorney's fees. No credit was claimed for taxes withheld by the company from the settlement.

By an amended return for the year 1955 filed May 21, 1958, petitioner reported as income the full amount of the judgment originally recovered against the company of $15,155, and claimed a credit for taxes withheld by the company in the amount of $2,604.30, which he stated was his computation of the tax "which should have been paid" by the company.

On November 30, 1955, petitioner was injured while employed as a steel construction foreman in Alaska. As a result of the injury, he was hospitalized from November 30 until December 23, 1955, and was absent from work for a period of 5 weeks following the injury.

Prior to and following petitioner's absence from work due to the injury petitioner worked 6 days in each week. At the time of the

injury petitioner had been employed for a period of 2 months. Pursuant to the employer's regular plan of wage continuation, petitioner was paid for the day of injury and for 1 day for each month previously worked, or 3 full days' pay, totaling $134.

On his return for 1955 petitioner claimed an exclusion for sick pay in the amount of $96.

During 1955 petitioner paid premiums of $198 on two health and accident insurance policies issued by the Capitol Life Insurance Company. Of the total premiums paid, $146.48 was to provide guaranteed weekly payments for a specified period of time in case of the total or partial disability of petitioner, $46.52 was to provide for payments of various specified sums in the event of petitioner's dismemberment or loss of sight, and $5 was to provide $10,000 of life insurance in case of petitioner's accidental death. The policies made no provision for payments measured by or conditioned on any charges for hospital, surgical, or other medical services.

On his return for 1955 petitioner included the full amount of such premiums in his schedule of medical expenses, and deducted such expenses to the extent they exceeded 3 percent of his reported adjusted gross income.

Respondent, in his deficiency letter (in addition to adjustments not here in issue), reduced the amount of the bonus settlement to be includable in income from $15,155 to $13,027.21, without allowing any credit for taxes withheld from such amount, reduced the amount of excludable sick pay from $96 to $33.34, and disallowed the deduction as a medical expense of the premiums paid on the health and accident insurance policies.

OPINION.

In a suit by petitioner against his former employer, petitioner recovered a judgment in the amount of $15,155. After settlement negotiations between the parties (taking into consideration the judgment on a countersuit), petitioner in 1955 received the amount of $13,027.21, or $2,127.79 less than the amount of the judgment.

In his amended return for the year 1955, petitioner reported the full amount of the judgment, $15,155, in income, and claimed a credit for taxes withheld in the amount of $2,127.79. Respondent determined that the amount of the judgment to be included in income is $13,027.21, and disallowed any credit for taxes withheld concerning such amount.

Section 31(a)(1), I.R.C. 1954, provides as follows:

SEC. 31. TAX WITHHELD ON WAGES.

(a) WAGE WITHHOLDING FOR INCOME TAX PURPOSES.—

(1) IN GENERAL.—The amount withheld under section 3402 as tax on the wages of any individual shall be allowed to the recipient of the income as a credit against the tax imposed by this subtitle.

Petitioner, therefore, would be allowed a credit for taxes withheld only to the extent of the amount that was actually withheld from him by his employer in compliance with the withholding provisions.

The record clearly shows that, while petitioner received an amount less than the total amount of the judgment recovered by him, such amount was arrived at, after negotiations, as in full satisfaction of the judgment. The parties did not negotiate or include in their settlement agreement any figure reflecting withholding taxes or any liability therefor.

This is not a situation such as that in *Basil F. Basila*, 36 T.C. 111, 118 *et seq.* (1961), in which in determining the amount of a bonus constructively received, we inferred circumstantially that the employer had complied with the withholding provisions of the law. The evidence in this case clearly shows, however, that the employer did not comply with the withholding provisions but paid to petitioner the entire amount agreed to by the parties in full satisfaction of the judgment.

Arthur Fralick, president of the company, testified that no amounts were withheld by the company from the bonuses paid to petitioner. Petitioner testified that he did not receive a W-2 form indicating any withholding by the company and that he was never informed by the company that the excess of the judgment over the amount received was withheld as taxes by the company. Petitioner received the entire amount due him under the settlement agreement in 1955. Inasmuch as nothing was withheld from such amounts pursuant to the withholding provisions, petitioner cannot be allowed a credit for taxes attributable thereto.

In the alternative, petitioner contends that although he received the entire amount due him from the company, inasmuch as the company was under a duty to withhold an amount for taxes from the amount paid to petitioner, the company, rather than petitioner, is liable to the taxing authority in the amount required to have been withheld, with any adjustments between the company and petitioner being a private matter between them.

The Code specifically provides that before an employee may receive any credit for taxes withheld, such amounts must have actually been *withheld* from him by his employer. While the actual payment by the employer of such withheld amounts to the Government does not affect the employee's right to receive a tax credit for such amounts, an employee cannot receive the full amount of his earnings and at the same time claim a credit for an amount which was never actually withheld from him. We agree with petitioner that an employer is liable to the taxing authorities for any amount which it was required to withhold, regardless of whether or not it was actually withheld. There-

fore, had the respondent chosen to do so, he could have attempted to collect from the company the amount which it was required to withhold from the settlement payment. Respondent, however, need not do so, but may assess the tax against the employee upon whom, in the final analysis, the tax burden must fall. The employee of an employer failing to properly withhold amounts for tax is not entitled to a credit for amounts which were never withheld from him.

We conclude, therefore, that the entire amount of the settlement of $13,027.21 is includable in the income for 1955 and that petitioner is not to be allowed any credit for taxes withheld since none were, in fact, withheld.

The second issue concerns what is commonly referred to as the sick pay exclusion. Petitioner during 1955 was injured and, pursuant to a wage continuation plan of his employer, received salary for 3 full days totaling $134 while he was hospitalized, attributable to the day of the injury and 2 days thereafter.

Petitioner excluded $96 of this amount from his income for 1955. On brief, however, he contends that the entire amount of $134 should be excluded from income.

Section 105(d), I.R.C. 1954, provides as follows:

SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS.

(d) WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid.

The theory upon which petitioner appears to rely is that the limitation on the exclusion to the rate of $100 per week refers to the period during which he was absent from work, and that, inasmuch as he was absent for a period of approximately 5 weeks, he is entitled to exclude all payments received by him during that period up to a maximum of $500. We cannot agree.

There is no doubt that under the wage continuation plan in effect, petitioner was paid only for the first 3 days of his injury rather than a smaller daily rate for the entire period of his absence from work. Sec. 1.105–4(d)(2) of the Income Tax Regs. provides:

(2) *Daily exclusion.* If an employee receives payments under a wage continuation plan for less than a full pay period, the extent to which such benefits are excludable under section 105(d) shall be determined by computing the daily rate of the benefits which can be excluded under section 105(d). Such

daily rate is determined by dividing the weekly rate at which wage continuation payments are excludable ($100) by the number of work days in a normal work week. * * *

The above regulation is a proper implementation of the provisions of section 105(d), I.R.C. 1954. *Arthur O. Graves*, 37 T.C. 133 (1961). The weekly rate of $100 in the statute applies to the period for which payment was made, rather than, as petitioner contends, for the period during which petitioner was absent from work.

Petitioner normally worked a 6-day week, resulting in a daily exclusion rate of $16.67. Inasmuch as petitioner received 3 full days' pay, the total exclusion would be limited to three times this amount, or $50.01. Stated another way, petitioner was paid for one-half of his normal working week. He would, therefore, be allowed to exclude one-half of the $100 weekly rate limitation or $50.

The final issue concerns the deductibility, as a medical expense, of $198 in premiums paid by petitioner during 1955 for accident and health policies providing guaranteed weekly payments in the event of his total or partial disability, payment of certain amounts in the event of dismemberment or loss of sight, and payment of a specified sum in the event of his accidental death.

We have recently held that we shall no longer follow our opinion in *Drayton Heard*, 30 T.C. 1093 (1958), revd. 269 F. 2d 911 (C.A. 3, 1959), relied on by respondent, and will henceforth deem premiums paid for health and accident insurance policies to be deductible as expense for medical care under section 213, I.R.C. 1954, subject to the statutory limitation of 3 percent of the adjusted gross income. *Donald G. Kilgore*, 38 T.C. 340 (1962), on appeal (C.A. 5, Sept. 27, 1962). Petitioner, therefore, may deduct the entire amount of the premiums paid for such policies, $198, subject to such limitation.

*Decision will be entered under Rule 50.*