LESLIE E. SPELL, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spell v. Commissioner
Docket No. 14658-93
United States Tax Court
T.C. Memo 1995-229; 1995 Tax Ct. Memo LEXIS 231; 69 T.C.M. (CCH) 2715; May 24, 1995, Filed *231 Decision will be entered under Rule 155. Leslie E. Spell, Jr., pro se. For Respondent: James E. Gray. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1988 in the amount of $ 13,233 and an addition to tax for negligence under section 6653(a)(1) in the amount of $ 662. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by respondent, [1] the issue remaining to be decided is the amount of wages paid to petitioner by his employer during the taxable year 1988. Specifically, we must decide whether petitioner received wages in the amount of $ 26,000, from which his employer withheld $ 5,200 for Federal income taxes and $ 2,600 for State taxes and Federal Insurance Contributions Act (FICA) taxes, or whether petitioner received wages in the amount of $ 18,200, from which his employer failed to withhold any amount for Federal, State, or FICA taxes. *232 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Leslie E. Spell, Jr. (petitioner) resided in Turkey, North Carolina, at the time he filed his petition in this case. Petitioner grew up working on his father's farm, located in Sampson County, North Carolina. His father died when petitioner was 20 years old. Petitioner took over the farm, which was subject to a Farmer's Home Administration (FHA) loan. Petitioner lost the farm through a bankruptcy proceeding. In December of 1987, John R. Godbold (Godbold), a local farmer, offered petitioner a job working on Godbold's various farms in Duplin County, North Carolina. Prior to that time petitioner had never worked for anyone other than his father and possibly for a brief period harvesting soybeans for another farmer. Petitioner and Godbold discussed the amount of petitioner's pay. [2] The terms of petitioner's employment were not committed to writing. At the time he went to work for Godbold, petitioner did not know what a Form W-4 was, and he does not recall completing a Form W-4. The record does not *233 establish that petitioner filled out a Form W-4 for Godbold. About January 2, 1988, petitioner began working for Godbold. Petitioner was responsible for the daily operations of Godbold's farms. Godbold grew wheat, soybeans, tobacco, and corn. During 1988, petitioner received weekly wages from Godbold in the amount of $ 350. Godbold paid petitioner by personal checks. In the memo section of the checks were the words "crop money". These payments were not always on time, sometimes being as much as a month late; however, petitioner did receive all 52 weeks of pay for a total of $ 18,200 for the taxable year 1988. Although petitioner expected to receive a bonus based on the crop yield, he did not receive a bonus. Petitioner *234 terminated his employment with Godbold in late 1988. By that time petitioner was not on the best of terms with Godbold, possibly because of the failure to receive a bonus but more likely because petitioner failed to pay Godbold for certain crop expenses that Godbold claimed he owed. During 1988, petitioner also was farming on his own behalf a 100-acre farm in Sampson County, located about 5 miles from Godbold's farms. Petitioner worked his farm in the evenings and on weekends after his work for Godbold was completed. This was the farm petitioner had lost through the bankruptcy, but he was able to lease this farm from the FHA through a special program. Godbold advanced petitioner $ 3,000 for payment of this lease. The crops raised on petitioner's farm in 1988 were wheat and soybeans, which were planted and harvested in sequence and not at the same time. The first crop, the wheat crop, was planted late and produced a low yield. Petitioner received $ 11,007 from the sale of his wheat. The succeeding soybean crop also was planted late and either was a failure or was sold in the following year. In either event, petitioner had no income in 1988 from his soybean crop. Petitioner *235 used Godbold's equipment when farming his own land. He used Godbold's tractor and cutter to cut ditch banks. Godbold and petitioner together disked petitioner's land in preparation for planting the wheat crop. With respect to petitioner's wheat crop, Godbold purchased wheat seed, paid for the rental of a spreader truck to plant the seed, purchased fertilizer, and paid for the harvesting and hauling of the wheat. Similarly, Godbold provided seed, fertilizer, chemicals, and equipment for petitioner's soybean crop. Petitioner paid Godbold $ 4,072 by check dated July 14, 1988, as payment for the money advanced for the lease ($ 3,000) and towards the costs of fertilizer ($ 617) and wheat seeds ($ 455) used on petitioner's farm. In November 1988, Godbold requested repayment of the remaining expenses. Petitioner indicated he would not be able to pay until after the first of the year (1989), apparently when the soybean crop was to be sold. Godbold received no further payment on the expenses he incurred in regard to petitioner's farm. As of January 31, 1989, petitioner had not received a Form W-2 from Godbold for the taxable year 1988. Later, petitioner received a Form 1099 for that *236 year reporting nonemployee compensation in the amount of $ 36,016.70 and zero withholdings; attached to the Form 1099 were three sheets of paper showing how Godbold had calculated the amount of nonemployee compensation shown on the Form 1099. Godbold listed the expenses he had incurred relating to petitioner's farm. The total of these expenses, including the payment of the lease, and amounts for equipment rental, for fertilizer, other chemicals, and seeds, and for harvesting costs for petitioner's wheat and soybean crops, was $ 21,888.70. [3] Godbold deducted the $ 4,072 that petitioner had paid towards these expenses to arrive at a figure of $ 17,816.70. To this, Godbold added $ 18,200 for petitioner's contract labor, for a total of $ 36,016.70. Petitioner believed the type of form and the amounts thereon *237 to be erroneous. [4] Petitioner was not able to obtain a Form W-2 from Godbold. In order to have time to determine the proper course of action, petitioner requested an extension of time to file his 1988 return. Petitioner's accountant contacted representatives of the Internal Revenue Service (IRS) for advice. In accordance with the suggestions made by the IRS representatives, petitioner attached a statement to his 1988 return. In the statement, petitioner indicated that he had agreed to work for $ 500 per week, and that he had requested that his employer withhold $ 150 per week, for a net pay of $ 350 per week; petitioner stated that he had instructed his employer to allocate the amount of $ 100 each week for Federal income tax and the remaining $ 50 for State and FICA taxes. [5] Petitioner denied receiving the $ 17,816.70 [6] in nonemployee compensation. On his Form 1040, petitioner reported his income from Godbold as wages of $ 26,000 ($ 500 X 52 weeks). Petitioner reported the income ($ 11,007) and expenses ($ 6,603) from the wheat crop on his own farm on Schedule F (Farm Income and Expenses) for a net farm profit of $ 4,404. Petitioner calculated the self-employment tax based *238 on this $ 4,404 of farm income. Petitioner reported that $ 5,200 in Federal income tax had been withheld. *239 Respondent made the following adjustments to petitioner's 1988 return. Respondent increased petitioner's income from Godbold by $ 10,016 to reflect the $ 36,016 reported on the Form 1099. [7] *240 Based on average farm production in Duplin County, North Carolina, [8] respondent estimated petitioner's crop yield, and increased the gross farm income from $ 11,007 to $ 36,300, thereby increasing taxable farm income by $ 25,293. Respondent determined that all of the resulting total $ 65,713 in income was self-employment income, and therefore, subject to self-employment tax in the amount of $ 5,859. On April 8, 1993, respondent issued to petitioner a notice of deficiency for the taxable year 1988, showing a deficiency in tax in the amount of $ 13,233 and an addition to tax under section 6653(a)(1) in the amount of $ 662. Respondent now accepts petitioner's Schedule F and self-employment income based thereon, as reported by petitioner. That Schedule F reported the income from petitioner's wheat crop, and there was no income in 1988 from the soybean crop. Respondent also states that petitioner's wage income should be $ 18,200 rather than the $ 26,000 reported by petitioner. OPINION Respondent has essentially conceded the issues in this case. However, respondent says no tax has been paid, but petitioner wants credit for $ 5,200 in Federal income taxes that he contends his employer withheld from his gross wages of $ 26,000 in 1988. We must decide the amount of wages paid to petitioner in taxable year 1988. The parties have agreed that petitioner received checks from Godbold in the total amount of $ 18,200 during the taxable year 1988. Respondent's position is that this amount was gross pay, and that no taxes were withheld. Petitioner's position is that the $ 18,200 was net pay, and that $ 5,200 was withheld for Federal income taxes and another $ 2,600 for State income and FICA taxes. Section 3402(a) requires employers to withhold income taxes from the wages of their employees. Prior to 1990, however, section 3401(a)(2) specifically exempted the remuneration of agricultural labor, as defined in section 3121(g), from the definition of wages for purposes of the withholding requirements. [9]Section 3121(g)(1) states that *241 "agricultural labor" includes all service performed-- on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, * * * In the present case, petitioner ran the daily operations of Godbold's farms. The crops raised were wheat, soybeans, tobacco, and corn. The work that petitioner performed falls within the definition of agricultural labor under section 3121(g). His earnings from Godbold, therefore, were not subject to the mandatory withholding *242 of Federal income taxes. Where withholding is not mandatory, section 3402(p) permits voluntary withholding if the employer and employee agree. The agreement must take the form prescribed in the regulations. Section 31.3402(p)-1(b)(1), Employment Tax Regs., requires the employee desiring voluntary withholdings to furnish his employer with a completed Form W-4. [10] Also, No request for withholding under section 3402(p) shall be effective as an agreement between an employer and an employee until the employer accepts the request by commencing to withhold from the amounts with respect to which the request was made.
Sec. 31.3402(p)-1(b)(1)(iii), Employment Tax Regs. If such agreement exists, the employee's remuneration or other payments are treated as if they were wages as defined in section 3401(a). Sec. 3402(p). *243 Section 31 allows the taxpayer a credit in the amount of taxes withheld against the amount of taxes due. The taxpayer may take this credit even where the employer has not paid the withheld tax over to the Government. Sec. 1.31-1, Income Tax Regs. The credit, however, only extends to taxes actually withheld. Church v. Commissioner, 810 F.2d 19 (2d Cir. 1987); Edwards v. Commissioner, 39 T.C. 78, 83 (1962), affd. in part, revd. in part 323 F.2d 751 (9th Cir. 1963). This Court has decided a case similar to the present one. In Chrisman v. Commissioner, T.C. Memo. 1990-305, the taxpayer contended he had an oral agreement for a net hourly rate of pay of $ 15. The Form W-2 which the taxpayer received stated an income equal to the total amount of the taxpayer's paychecks ($ 7,786.50) and zero Federal income tax withholding. In the Chrisman case, the taxpayer argued that: (1) The amount of gross wages on the W-2 should be increased to include the amount of tax that should have been withheld based on a net pay of $ 15 per hour, and (2) such amount had been withheld. *244 The taxpayer had no evidence other than his own statements to substantiate his claims, no records indicating that his wages were any amount other than $ 15 per hour, and no records indicating any withholding for Federal income tax. This Court held that the taxpayer's testimony alone was not enough to satisfy the burden of proof. Therefore, his gross wages were $ 7,786.50 as determined by respondent. In Hanns v. Commissioner, T.C. Memo. 1990-652, the taxpayer received checks in the amount of $ 250 per week in addition to his normal salary. His employer provided a Form 1099 reflecting this additional income as nonemployee compensation and no withholdings on such additional payments. The taxpayer had understood that his employer would take care of the taxes on the additional payments, i.e., that the $ 250 was a net payment, but he failed to establish that this was the agreement he had with his employer. This Court pointed out, however, that even if the taxpayer had established such an agreement existed, the employer's breach of this agreement would not relieve the taxpayer of the liability to pay Federal income taxes on the compensation he received *245 for services rendered. In this case, petitioner did not complete a Form W-4, nor did he put his request for withholdings in writing to his employer. Petitioner provided no proof that Godbold accepted his request by withholding any amounts. There is no evidence of any withholding in this case. We find, therefore, no tax was withheld, and the amount of petitioner's gross wages for 1988 was $ 18,200. To reflect respondent's concessions and the above holding, Decision will be entered under Rule 155. Footnotes
1. Respondent concedes that petitioner did not have income from his farming operations in excess of the amount reported by petitioner on Schedule F of his 1988 return; that petitioner was a common law employee with respect to amounts paid to petitioner by John R. Godbold and, therefore, is not liable for self-employment tax on such earnings; that $ 17,816.70 of the amount Godbold reported on the Form 1099 need not be included in petitioner's income; and that petitioner is not liable for the addition to tax under sec. 6653(a)(1)↩.
2. Godbold recalled that wages of $ 350 a week were agreed upon, based on what petitioner had been receiving from the other farmer for harvesting soybeans. Petitioner agreed that he asked for $ 350 a week to live on, but he considers that to be net wages, not gross wages. See infra↩ note 5.
3. Many of the items making up the $ 21,888.70 were based on estimates by Godbold. There is no evidence in the record to substantiate the estimates or the other figures in Godbold's computation of crop expenses.↩
4. Petitioner believed he was Godbold's employee, not an independent contractor, and therefore should have received a Form W-2, not a Form 1099 for his wage income. Respondent conceded this issue. See supra↩ n. 1. The discrepancies as to the amounts of compensation and withholding comprise the central issue in this case.
5. Godbold denied that a conversation to that effect ever occurred. Although petitioner may now sincerely believe he made such a request and gave such instructions to Godbold, the Court thinks it is unlikely that an inexperienced young man, who admittedly did not know what a Form W-4 was when he went to work for Godbold, would have discussed withholding of Federal, State, and FICA taxes. See supra↩ n. 2. However, the Court need not resolve this conflict in the testimony, since the Court would reach the same result in this case whether or not that conversation occurred.
6. Petitioner's statement says $ 17,810.70, but the correct figure is $ 17,816.70 ($ 36,016.70 less $ 18,200).↩
7. Respondent later conceded the issue of whether the $ 17,816.70 in unpaid farm expense debt should be included in petitioner's 1988 income. It appears respondent made this concession due to the corresponding deductions petitioner could have taken for these farm expenses that would have offset any additional income.↩
8. Petitioner's farm was in Sampson County.↩
9. For remuneration paid after Dec. 31, 1989, the exemption under sec. 3401(a)(2) has been narrowed so that payment for agricultural labor that fits the definition of wages under sec. 3121(a)↩ (generally, for agricultural labor, any amount over $ 150 paid in a year) is now subject to the withholding of Federal income tax. See Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7631(a), 103 Stat. 2106, 2378; H. Rept. 101-386, at 620-621 (1989).
10. If the employee wishes voluntary withholdings and is already subject to mandatory withholding for other payments from that same employer, or wishes the voluntary withholdings to terminate on a specific date, then the employee also must provide a letter, the contents of which must conform to the requirements of sec. 31.3402(p)-1(b)(1)(ii), Employment Tax Regs.↩