T.C. Summary Opinion 2010-69

UNITED STATES TAX COURT

NORMAN C. JOHNSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19860-06S.                    Filed June 7, 2010.

Norman C. Johnson, pro se.

<u>Jack T. Anagnostis</u>, for respondent.

CHABOT, <u>Judge</u>:  This case was heard pursuant to section

7463.[1]  The decision to be entered is not reviewable by any other

_____

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1986 as in effect for proceedings commenced on the date the petition in the instant case was filed, except that the section references in the footnotes to tables 2 and 4 are to sections of the Internal Revenue Code of 1986 as in effect for the years in issue.

court, and this opinion shall not be treated as a precedent for any other case.  Sec. 7463(b).

This case was commenced in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.  The issues for decision are as follows:

(1) Whether petitioner's tax liabilities for 1996, 1997, 1999, 2000, and 2001 (hereinafter sometimes collectively referred to as the years in issue)[2] were discharged in bankruptcy;

(2) whether petitioner had a prior opportunity to dispute the underlying tax liabilities for any of the years in issue; and

(3) whether petitioner's rights in this collection matter are affected by any of certain miscellaneous matters.

## Background

The stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, petitioner resided in Pennsylvania.

## The First Bankruptcy Case

On November 4, 1996, petitioner filed a bankruptcy petition under chapter 13 of the U.S. Bankruptcy Code in the U.S.

---

[2]The parties do not explain what is different about 1998.

Bankruptcy Court for the Eastern District of Pennsylvania; the resulting proceeding is hereinafter sometimes referred to as petitioner's first bankruptcy case. In 1997 the Internal Revenue Service (IRS) filed proofs of claim for petitioner's income taxes for 1988-90 and 1992-95 in petitioner's first bankruptcy case.[3] The bankruptcy court ordered petitioner's employer to deduct $122 from petitioner's wages every 2 weeks and pay these amounts to the bankruptcy trustee, who in turn was to pay these amounts to the IRS. The amounts were paid and, on January 4, 2002, the Bankruptcy Court discharged petitioner from all debts under the plan in petitioner's first bankruptcy case.

The Years in Issue

On September 9, 1998, petitioner filed income tax returns for 1996 and 1997, showing the amounts set forth in table 1.

Table 1

| Item | Amount | |
| | 1996 | 1997 |
| --- | --- | --- |
| Adjusted gross income | $34,781 | $29,059 |
| Taxable income | 28,231 | 22,259 |
| Tax | 4,783 | 3,341 |
| Withholding | 3,177 | 576 |

---

[3]The record does not indicate what happened to 1991. There is no indication in the record that the facts as to 1991 play any role in the substance of the instant case or the perceptions of any party in the instant case.

These tax returns were prepared for petitioner by a "representative" of respondent at an office of respondent in Philadelphia, Pennsylvania.

On November 30, 1998, respondent assessed the amounts shown in table 2.

Table 2

| Item[1] | Amount | |
| --- | --- | --- |
| | 1996 | 1997 |
| Tax | $4,783.00 | $3,341.00 |
| Estimated tax "penalty" | 67.00 | 146.00 |
| Late filing "penalty" | 361.35 | 124.42 |
| Failure to pay tax "penalty" | 160.60 | 110.60 |
| Interest | 282.79 | 145.25 |

[1]The estimated tax "penalty" is presumably a sec. 6654 addition to tax, the late filing "penalty" is presumably a sec. 6651(a)(1) addition to tax, and the failure to pay tax "penalty" is presumably a sec. 6651(a)(2) addition to tax. See, e.g., discussion in Burke v. Commissioner, T.C. Memo. 2009-282.

On October 7, 2002, petitioner filed tax returns for 1999, 2000, and 2001, showing the amounts set forth in table 3.

Table 3

| Item | Amount | | |
| --- | --- | --- | --- |
| | 1999 | 2000 | 2001 |
| Adjusted gross income | $30,483 | $31,842 | $32,806 |
| Taxable income | 23,433 | 24,642 | 25,356 |
| Tax | 3,514 | 3,694 | 3,506 |
| Withholding | 700 | 869 | 906 |

On November 11, 2002, respondent assessed the amounts shown in table 4.

Table 4

| Item[1] | Amount | | |
|---|---|---|---|
| | 1999 | 2000 | 2001 |
| Tax | $3,514.00 | $3,694.00 | $3,506.00 |
| Late filing "penalty" | 703.50 | 706.25 | 260.00 |
| Interest | 724.10 | 385.91 | 95.10 |

[1]The late filing "penalty" is presumably a sec. 6651(a)(1) addition to tax.

For each of the years in issue, petitioner failed to pay all of the liabilities reported on his income tax returns.[4]

The Second Bankruptcy Case

On September 18, 2002, petitioner filed a bankruptcy petition under chapter 13 in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania; the resulting proceeding is hereinafter sometimes referred to as petitioner's second bankruptcy case. On December 9, 2002, the IRS filed a proof of claim for petitioner's income taxes for the years in issue in petitioner's second bankruptcy case. Petitioner's only debt in his second bankruptcy case was to the IRS. On March 28, 2003, petitioner moved to voluntarily dismiss his second bankruptcy case, stating that he was in the process of filing an offer-in-compromise with the IRS to "pay all past due taxes." The

_____

[4]So stipulated. We assume that the parties mean in their stipulation that petitioner failed to pay the balances due; i.e., the liabilities less the withholdings, shown in tables 1 and 3. For the years in issue, the balances due on the tax returns aggregate about two-thirds of the liabilities reported on the tax returns.

Bankruptcy Court granted petitioner's motion on April 2, 2003, "in order for Debtor to file an Offer in Compromise with the Internal Revenue Service."

Later Proceedings

On June 1, 2003, petitioner submitted to the IRS an offer-in-compromise for the years in issue;[5] the IRS rejected it on July 22, 2003. On September 16, 2003, petitioner entered into an installment agreement with the IRS for the years in issue. The record in the instant case does not include a copy of the agreement.

On or about September 6, 2004, respondent notified petitioner as follows as to his 2002 income tax account:

WE APPLIED YOUR PAYMENT TO YOUR ACCOUNT

THANK YOU FOR YOUR INQUIRY. WE LOCATED AND APPLIED YOUR PAYMENT(S) TOTALING $100.00 TO THE ACCOUNT SHOWN ABOVE. THE PAYMENT(S) WE APPLIED ARE SHOWN AT THE END OF THIS NOTICE.

WE MADE A CHANGE TO YOUR ACCOUNT THAT RESULTED IN A VERY SMALL BALANCE DUE. WE WANT YOU TO KNOW ABOUT THE CHANGE, BUT NO PAYMENT IS DUE. OUR POLICY IS TO KEEP YOU INFORMED, BUT WE DON'T WANT TO BURDEN YOU BY ASKING YOU TO PAY THIS AMOUNT. AGAIN, PLEASE DON'T SEND A PAYMENT.

YOUR ACCOUNT NOW:

```
AMOUNT YOU PREVIOUSLY OWED..........................$61.46
LESS YOUR PAYMENT(S)................................100.00
REMAINING BALANCE OWED..............................38.54
FAILURE TO PAY PENALTY..............................27.25
INTEREST FIGURED TO SEP. 6, 2004....................13.62
*UNDERPAYMENT CREDIT................................$2.33-
```

---

[5]The parties stipulated that the IRS received petitioner's offer in compromise for the years in issue on June 1, 2003. The stipulated Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for each of the years in issue shows June 17, 2003, as "Offer in Compromise Pending" and does not show any entry for June 1, 2003. We have not found anything in the record explaining the significance of the June 17, 2003, date on each Form 4340. Where the Forms 4340 are not contradicted by the parties' stipulations or other evidence in the record we have accepted the statements on the Forms 4340 as being accurate.

AMOUNT YOU NOW OWE......................................NONE

*THE SMALL BALANCE THAT YOU OWED HAS BEEN CREDITED TO YOUR ACCOUNT.
YOUR ACCOUNT BALANCE IS NOW ZERO.

On December 13, 2004, respondent sent to petitioner a notice of intent to levy with the caption "You Defaulted On Your Installment Agreement". That notice of intent to levy explained that petitioner defaulted because he failed to make his payments as agreed.

Collection Proceedings

On September 24, 2005, respondent sent to petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. In response, on October 20, 2005, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing (hereinafter sometimes referred to as the hearing request). In the hearing request, petitioner stated: "I was under the protection of the bankruptcy court until bill was paid." Petitioner believed that his payments under the plan in his first bankruptcy case satisfied his tax liabilities for the years in issue.[6]

---

[6]Respondent's proposed finding of fact (to which petitioner does not object) refers to payments "distributed to respondent during the period from 11/04/1996 to 01/10/2005". The relevant exhibit shows that payments under the plan in petitioner's first bankruptcy case were made as late as October 2001, and that on Jan. 4, 2002, the Bankruptcy Court discharged petitioner from all debts under the plan in petitioner's first bankruptcy case. We do not understand what were the payments received after the discharge from petitioner's first bankruptcy case "to 01/10/2005".

Petitioner and respondent's settlement officer, Ronald Kroll (hereinafter sometimes referred to as Kroll), met for a face-to-face administrative collection hearing on June 21, 2006. At the administrative collection hearing petitioner (1) argued that his tax liabilities for the years in issue were satisfied by his payments under his chapter 13 plan in his first bankruptcy case, (2) stated that his employer did not withhold sufficient amounts to pay his taxes for the years in issue, and (3) declined to complete a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, relevant to a collection alternative. Petitioner contends that he offered a collection alternative--"that respondent discontinue collection action, consistent with its prior statement that no tax was due on his account." Respondent's evaluation is that petitioner "declined to provide" a collection alternative.

On July 12, 2006, respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, which (1) determined that "the periods covered by this hearing [the administrative collection hearing] represent post-petition tax years and were not included in your bankruptcy action"; (2) determined that "the issuance of the Notice of Intent to Levy is appropriate"; and (3) informed petitioner of his right to petition the Tax Court within 30 days. Petitioner timely petitioned this Court, contending that during the years in

issue, his "finances were under the supervision of the bankruptcy court in the Eastern District of Pennsylvania.  The bankruptcy was discharged effective 1/4/02.  At that time all outstanding debts were satisfied after completion of the repayment plan, including the tax liabilities for the * * * [years in issue]."

Discussion

1.  In General--The Collection Framework

In general, section 6321 imposes a lien in favor of the United States on all property and rights to property of a person liable for tax when a demand for the payment of the person's tax has been made and the person fails to pay the tax.  Such a lien arises when an assessment is made.  Sec. 6322.

Sections 6320 (relating to liens) and 6330 (relating to levies) generally provide protections for taxpayers in tax collection matters.  In general, sections 6320 and 6330 provide for notice and the right to an administrative collection hearing and judicial review when the Commissioner files a Federal tax lien or proposes to collect unpaid taxes by levy.  Inv. Research Associates, Inc. v. Commissioner, 126 T.C. 183, 185-186 (2006).

Section 6320(b) affords taxpayers the right to a hearing before an impartial officer or employee of the Appeals Office. Pursuant to section 6320(b)(2), a taxpayer is entitled to only one hearing regarding the tax period relating to the amount of unpaid tax.

Section 6320(c) provides that the hearing generally shall be conducted consistent with the procedures set forth in section 6330(c), (d) (other than paragraph (2)(B) thereof), (e), and (g).

Section 6330(c)(1) requires the Appeals officer to obtain verification that the requirements of any applicable law or administrative procedure have been met.  Section 6330(c)(2)(A) provides that the taxpayer may raise at the hearing "any relevant issue relating to the unpaid tax or the proposed levy" including spousal defenses, challenges to the appropriateness of collection actions, and collection alternatives.

Section 6330(c)(3) provides that a determination of the Appeals officer shall take into consideration the verification under section 6330(c)(1), the issues raised by the taxpayer, and whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action not be any more intrusive than necessary.

Section 6330(c)(2)(B) provides, in general, that a taxpayer may dispute the underlying tax liability at the administrative collection hearing if both of two requirements have been satisfied:  (1) The taxpayer did not receive a notice of deficiency for that tax liability and (2) the taxpayer did not otherwise have an opportunity to dispute that tax liability.  See Hoyle v. Commissioner, 131 T.C. 197, 199 (2008).  If either one

of these requirements is not satisfied (i.e., if the taxpayer received a notice of deficiency or the taxpayer had another opportunity to dispute the tax liability), then section 6330(c)(2)(B) does not provide authority for the taxpayer to dispute that tax liability at the administrative collection hearing. See Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007) (as to notice of deficiency); Lewis v. Commissioner, 128 T.C. 48 (2007) (as to other opportunity to dispute). However, the taxpayer may dispute certain matters under section 6330(c)(2)(A), including (as here relevant) whether a liability was discharged in bankruptcy, without regard to the restrictions described in section 6330(c)(2)(B). See Swanson v. Commissioner, 121 T.C. 111, 118-119 (2003).

When the Appeals Office issues a notice of determination to a taxpayer following an administrative collection hearing regarding a lien or levy action, sections 6320(c) (by way of cross-reference) and 6330(d)(1) provide that the taxpayer will have 30 days following the issuance of a notice of determination to seek judicial review. If the underlying tax liability is properly in issue, then the Court will review the determination by the Appeals Office de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). If, instead, the underlying tax liability is not in issue, then the Court will review the determination of the Appeals Office for abuse of discretion. Id.

We proceed to consider the contentions presented in the instant case.

2. Discharge in First Bankruptcy Case

In his petition, petitioner contends as follows:

> During the time period in question [i.e., the years in issue], my finances were under the supervision of the bankruptcy court in the Eastern District of Pennsylvania. The bankruptcy was discharged effective 1/4/02. At that time, all outstanding debts were satisfied after completion of the repayment plan, including the tax liabilities for the above periods.

We have jurisdiction to review respondent's determination that petitioner's tax liabilities for the years in issue were not discharged in the first bankruptcy case; petitioner's contention that they were so discharged amounts to a challenge of the appropriateness of the collection action under section 6330(c)(2)(A). See Bussell v. Commissioner, 130 T.C. 222, 236 (2008). We consider such a contention without the restrictions of the "challenges to * * * the underlying tax liability" rules of section 6330(c)(2)(B). See Swanson v. Commissioner, 121 T.C. at 118-119.

Debtors filing for chapter 13 bankruptcy are required to submit a plan for repayment of creditors. 11 U.S.C. secs. 1321 and 1322 (2006). Generally, debts provided for by the plan in a chapter 13 bankruptcy are discharged upon completion of that plan. 11 U.S.C. sec. 1328 (2006); In re Lilley, 91 F.3d 491, 494-495 (3d Cir. 1996). But debts incurred after commencement of

the bankruptcy case and not provided for by the plan generally are not discharged. 8 Collier on Bankruptcy, par. 1328.02[1], at 1328-20 (16th ed. 2010). Post-bankruptcy-petition tax liabilities generally are included among those debts that are not discharged. See In re Woods, 316 Bankr. 522, 524-525 (Bankr. N.D. Ill. 2004).

Petitioner's plan in his first bankruptcy case included tax liabilities for 1988-90 and 1992-95, and the IRS filed proofs of claim for those years. But petitioner's tax liability for 1996, the earliest of the years in issue, did not become payable until after he filed his bankruptcy petition in his first bankruptcy case. Moreover, the IRS did not file a proof of claim for petitioner's tax liabilities for the years in issue in petitioner's first bankruptcy case. Although the plan in petitioner's first bankruptcy case was carried out during the years in issue, none of the tax liabilities for the years in issue were included in that plan.

Thus, because all of his tax liabilities for the years in issue became payable after the first bankruptcy petition was filed, and because the IRS did not file a proof of claim with respect to those liabilities, petitioner's tax liabilities for the years in issue were not discharged in his first bankruptcy case.

We hold, for respondent, that none of petitioner's tax liabilities for the years in issue were discharged in the first bankruptcy case.

3.  Petitioner's Prior Opportunity To Dispute His Underlying Tax
    Liabilities for the Years in Issue

Petitioner maintains that he has not had a prior opportunity to dispute his underlying liabilities for the years in issue.[7] He also maintains that his attorney prevented him from attending the hearing in his second bankruptcy case, so he asked her to withdraw from that bankruptcy case and to move to dismiss his bankruptcy petition. Respondent maintains that petitioner had an opportunity to dispute his underlying tax liabilities for the years in issue during his second bankruptcy case.

As we explained in Kendricks v. Commissioner, 124 T.C. 69, 77-79 (2005), if the IRS submits a proof of claim for unpaid Federal tax liabilities for the years in issue in a taxpayer's bankruptcy action, then, for purposes of section 6330(c)(2)(B), the taxpayer has had the opportunity to dispute the underlying

---

[7]Respondent does not contend that petitioner received a notice of deficiency for any of the years in issue. Petitioner does not contend that a notice of deficiency should have been issued. See sec. 6201(a)(1). The record before us does not clearly fill in the gaps in the story. We leave the parties where we find them as to the notice of deficiency implications, and we focus on the other opportunity-to-dispute prong of sec. 6330(c)(2)(B).

tax liabilities.  This is so even where the taxpayer voluntarily moves to dismiss his bankruptcy case before a hearing on the underlying liabilities.  Id.

Petitioner filed his second bankruptcy case on September 18, 2002, and the IRS filed a proof of claim for the years in issue in petitioner's second bankruptcy case on December 9, 2002.  Thus, petitioner could have contested his underlying tax liabilities during his second bankruptcy case.  See Kendricks v. Commissioner, 124 T.C. at 77.

The parties have stipulated, and we have found, that on March 28, 2003, petitioner moved to voluntarily dismiss his second bankruptcy case, stating that he was in the process of filing an offer-in-compromise with the IRS.  On April 2, 2003, the Bankruptcy Court granted this motion "in order for Debtor [petitioner] to file an Offer in Compromise with the Internal Revenue Service."  Two months later petitioner submitted an offer-in-compromise.

As we held in Kendricks, this voluntary dismissal does not change the conclusion that petitioner had an opportunity to dispute his underlying tax liabilities.

Petitioner contends as follows:

2. Petitioner had filed the Chapter 13 bankruptcy action on the advice of the attorney, Stephanie Rosof, appointed to him by his employee union.  However, on the date of his bankruptcy hearing, Ms. Rosof prevented him from attending the bankruptcy proceeding.  Petitioner did not believe Ms. Rosof was effectively

representing his interests so asked her to withdraw her representation and directed her to dismiss his bankruptcy petition. Therefore, petitioner did not have a meaningful opportunity to dispute the tax liabilities for 1996 through 2001 in the bankruptcy action he filed on September 18, 2002.

The parties filed stipulations, and petitioner testified at the evidentiary hearing. On the basis of that evidence, we have found that (1) petitioner filed his second bankruptcy case, (2) almost 3 months later the IRS filed a proof of claim for petitioner's taxes for the years in issue, (3) almost 4 months after that petitioner moved to dismiss his second bankruptcy case, stating that he was in the process of filing an offer-in-compromise, (4) a few days later the bankruptcy court granted the dismissal motion in order for petitioner to file an offer-in-compromise, and (5) about 2 months after that petitioner submitted an offer-in-compromise. It is evident that he took the actions even though he now tells us he fired his bankruptcy counsel because he "did not believe Ms. Rosof was effectively representing his interests". This concern was not mentioned in petitioner's testimony. Also absent from petitioner's testimony is any indication that in any way "Ms. Rosof prevented him from attending the bankruptcy proceeding." Petitioner may now regret having followed Ms. Rosof's advice, but the evidence of record (testimony, stipulations) makes it clear that the actions petitioner took brought him into the ambit of having had another opportunity to dispute his tax liabilities.

We hold, for respondent, that petitioner had an opportunity to dispute his underlying liability for each of the years in issue, within the meaning of section 6330(c)(2)(B); thus, petitioner is not permitted to dispute his underlying tax liability for any of the years in issue in this collection proceeding.[8]

4. The "Stop Sending Payments" Letter

Petitioner contends that respondent's settlement officer abused his discretion because respondent had previously accepted an installment agreement covering the years in issue and also 2002, and in connection with that installment agreement, respondent told petitioner "to stop sending payments because no further payments were due." Respondent maintains that petitioner was mistaken because the evidence petitioner relied on applied only to 2002 and not to any of the years in issue.

Petitioner has the burden of proof in the instant case. See Rule 142(a).[9] The letter that petitioner produced, telling him to stop making payments and that his "account balance is now zero", clearly refers only to 2002. As respondent notes, the

---

[8]Although he did not have to, Kroll apparently considered petitioner's underlying tax liabilities at the collection hearing. But that did not waive the restrictions of sec. 6330(c)(2)(B). See Behling v. Commissioner, 118 T.C. 572, 579 (2002).

[9]Unless indicated otherwise, all Rule references are to the Tax Court Rule of Practice and Procedure.

account transcripts for the years in issue include references to "installment agreement" but the account transcript for 2002 does not refer to any installment agreement.

The parties have not furnished us with a copy of the installment agreement or a relevant summary that would show that the installment agreement covered the years in issue and also 2002.  On brief, petitioner states that "he wrote on the checks that he sent to apply the installment payments to tax year 2002." Petitioner may have become confused.  However, we are satisfied that there is no evidence in the record that respondent told petitioner to stop making payments with respect to the years in issue.

We hold, for respondent, that the "stop payment" letter does not show that respondent's settlement officer abused his discretion.

5.  <u>Income Tax Withholding</u>

Petitioner also contends that his employer failed to properly withhold amounts sufficient to satisfy his income tax liabilities for the years in issue.  On brief, he argued as follows:

> Petitioner reasonably believed, pursuant to the January 29, 1997, order of the United States Bankruptcy Judge Diane Sigmund, that his employer was making the proper withholdings from his wages for the remittances to his sole creditor, the Internal Revenue Service. (Exhibit 17-J).  As his wages were under the "supervision and control of the Court," petitioner reasonably expected his employer to report accurate wages and proper federal tax withholdings from his earnings during the years, 1997 through 2001.  Petitioner's bankruptcy

attorney, David Offen, never advised that the payments would not cover any new tax liabilities that might be incurred during those years. For each tax year at issue, petitioner filed for an extension for filing as he believed was required of him.

In September 1998, after his returns for tax years 1996 and 1997 were prepared by one representative of respondent at its 7th and Arch Street office in Philadelphia, petitioner was sent to speak with William Johnson, another representative of respondent at that office. Johnson advised petitioner that petitioner did not have to pay any taxes because he was "under legalities."

Petitioner again references the letter discussed supra. The "Stop Sending Payments" letter states that he had "believed that respondent had come around to agree with petitioner's position that no taxes were owed for the years in dispute" and concludes that respondent abused respondent's discretion by determining to proceed in the instant collection dispute.

As here relevant, section 31(a)(1) provides to petitioner a credit for the amounts of income taxes his employer withheld from his wages. Amounts so withheld are credited even if the employer failed to pay them over to the IRS; amounts not so withheld are not credited even if they should have been withheld. Edwards v. Commissioner, 39 T.C. 78, 83-84 (1962), affd. on this issue 323 F.2d 751, 752 (9th Cir. 1963); sec. 1.31-1(a), Income Tax Regs.

There is no contention that petitioner's section 31 credit for each of the years in issue was different from what his employer actually withheld. We do not have information that would enable us to decide whether, as petitioner contends, his

employer should have withheld more, but that would not affect petitioner's section 31 credit even if petitioner were correct. We do note that, if petitioner was correct, and if his employer had withheld a greater amount, then petitioner would have received less take-home pay.

As to the effect of the stop-sending-payments letter, we reaffirm our conclusion that this letter does not persuade us that respondent has abused respondent's discretion.

Neither side has raised the question of whether a challenge to the amount of a section 31 credit is a challenge as to the underlying tax liability (section 6330(c)(2)(B)) or a challenge to the appropriateness of the collection action (section 6330(c)(2)(A)(ii)); petitioner loses on this issue in any event.

We hold, for respondent, that petitioner is not entitled to any section 31 credit in excess of what has been allowed.

6. Collection Alternative

Petitioner states that at the administration hearing he offered a proposed collection alternative--"respondent told him he does not owe and it should not recant that statement."

We hold that respondent did not abuse respondent's discretion by rejecting that "collection alternative".

7. Conclusion

At the hearing, respondent's counsel indicated on the record that respondent may be willing to reduce some items that have

been assessed.  Accordingly, even though we have ruled for respondent on every disputed matter, we will provide a short period of time for exploration of modifications in the interest of justice.

<u>An appropriate order will be issued</u>.