T.C. Memo. 2010-135

UNITED STATES TAX COURT

RICHARD MARK SCHMERMAN & AMY LYNN SCHMERMAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26735-08L.                    Filed June 21, 2010.

Richard Mark Schmerman and Amy Lynn Schmerman, pro sese.

Heather D. Horton, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  This case was commenced in response to a
notice of determination concerning collection action.  The issue
for decision is whether the Internal Revenue Service (IRS)
Appeals Office abused its discretion by sustaining the filing of
a Federal tax lien.  All section references are to the Internal
Revenue Code.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Arizona at the time their petition was filed.

Petitioners filed joint Federal income tax returns for 2002, 2003, and 2004 on October 17, 2003, October 19, 2004, and October 21, 2005, respectively. For each of these 3 years, petitioners failed to pay the balance of tax reported as due.

On December 23, 2006, the IRS sent petitioners a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to the 2002, 2003, and 2004 tax liabilities. Petitioners did not submit a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in response.

On September 18, 2007, the IRS sent petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 informing petitioners that a notice of Federal tax lien was being filed that same day with the local county recorder's office. The recorded lien reported outstanding amounts owed of $17,187.49, $43,513.49, and $32,572.52 for 2002, 2003, and 2004, respectively.

On October 25, 2007, petitioners responded to the Federal tax lien filing by submitting a completed Form 12153 and attached a letter addressed to the IRS. The letter noted that petitioners

had filed Form 1045, Application for Tentative Refund, asserting that their 2005 Federal income tax return "had a large self-employment loss that would adjust both the 2003 and 2004 tax years filed. The business loss from the 2005 tax year would have adjusted the 2003 and 2004 income tax obligations to zero, resulting in only self-employment taxes." The letter also stated that on September 7, 2007, petitioners submitted a Form 1045 to the IRS for the third time and, even with this in process, the lien was filed. Petitioners also represented that the office building where their business was located caught fire on September 8, 2007, and that without office space they could not operate the business. Petitioners claimed that the filing of the lien damaged their credit, resulting in their inability to lease office space.

The IRS acknowledged receipt of the request for a hearing by letter dated November 15, 2007. Subsequently, petitioners' Form 1045 was processed, and on March 17, 2008, the IRS abated income taxes due from petitioners for 2003 and 2004 to allow net operating losses from 2005 that were carried back to 2003 and 2004. The underlying tax liabilities disputed in petitioners' request for a hearing were thus resolved. Petitioners still have outstanding balances for 2002, 2003, and 2004.

Petitioners filed an application for an extension of time to file their tax return for 2006, but did not file a tax return by

the October 15, 2007, deadline.  For 2007, petitioners filed an application for extension and had until October 19, 2008, to file their 2007 tax return.

By letter dated May 19, 2008, an IRS settlement officer informed petitioners that a face-to-face conference was scheduled for June 19, 2008, and that this would be their opportunity to discuss the reasons that they disagreed with the collection action and/or to discuss alternatives to the collection action. The settlement officer's letter noted:

> For me to consider alternative collection methods such as an installment agreement or offer-in-compromise, you must provide any items listed below. In addition, you must have filed all Federal tax returns required to be filed.
>
> Appeals cannot approve an installment agreement or accept an offer-in-compromise unless all required estimated tax payments for the current year's income tax liability have been made.  If you wish to pursue one of these alternatives during the * * * [collection due process] hearing process, you must arrange for the payment of any required estimated tax payments. Delinquent estimated tax payments can be included in an installment agreement.  However, the estimated tax payments must be paid in full before an offer-in-compromise can be accepted.  Our records indicate that you have not made estimated tax payments for the following period(s):  2007, 2008.

The letter also explained that the settlement officer could not consider collection alternatives at petitioners' hearing without petitioners' submitting the following information within 14 days from the date of the letter:  (1) A completed collection information statement (Form 433-A, Collection Information

Statement for Wage Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Businesses); (2) a signed income tax return for 2006; (3) proof of estimated tax payments for 2007 and 2008; and (4) Form 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien.

On June 19, 2008, the settlement officer conducted a face-to-face conference with Richard Schmerman (petitioner). A letter from Amy Schmerman was presented to the settlement officer authorizing petitioner to represent her during the hearing. At the conference, the settlement officer explained the collection due process (CDP) procedures, petitioners' additional judicial rights, and waiver provisions. Also, the settlement officer and petitioner discussed an installment agreement, the unfiled Federal income tax returns for 2006 and 2007, and the procedures for penalty abatement and lien withdrawal. Petitioners had not supplied the documents listed in the letter dated May 19, 2008, and at the conclusion of the meeting, the settlement officer gave petitioners an extension to July 31, 2008, to do so. The settlement officer also gave petitioners the same deadline within which to submit a letter requesting penalty abatement. Petitioners were subsequently granted additional extensions, with a final deadline of August 31, 2008, for the documentation to be submitted.

## OPINION

Section 6321 imposes a lien in favor of the United States on all property and property rights of a taxpayer liable for taxes after a demand for the payment of the taxes has been made and the taxpayer fails to pay.  The lien arises when the assessment is made.  Sec. 6322.  The IRS files a notice of Federal tax lien to preserve priority and put other creditors on notice.  See sec. 6323.  Section 6320(a) requires the Secretary to send written notice to the taxpayer of the filing of a notice of lien and of the taxpayer's right to an administrative hearing on the matter.

The hearing generally shall be conducted consistent with procedures set forth in section 6330(c), (d), (e), and (g).  Sec. 6320(c).  At the hearing a taxpayer may raise any relevant issue, including challenges to the appropriateness of the collection action and possible collection alternatives.  Sec. 6330(c)(2)(A).

Following the hearing the Appeals Office must make a determination whether the lien filing was appropriate and is required to consider:  (1) Whether the Secretary has met the requirements of applicable law and administrative procedure; (2) the relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns that the collection action be no more intrusive than necessary.  Sec. 6330(c)(3).

Petitioners' underlying tax liability is not in dispute; thus the Court reviews the IRS' determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). To establish an abuse of discretion, the taxpayer must show that the decision complained of is arbitrary, capricious, or without sound basis in fact or law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007) (citing Woodral v. Commissioner, 112 T.C. 19, 23 (1999)); see Keller v. Commissioner, T.C. Memo. 2006-166, affd. 568 F.3d 710 (9th Cir. 2009). In reviewing for abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the CDP hearing or otherwise brought to the attention of the IRS Appeals Office. Giamelli v. Commissioner, supra at 115; Magana v. Commissioner, 118 T.C. 488, 493 (2002).

Petitioners assert that the settlement officer abused her discretion by not releasing the lien and not considering an installment agreement and that the Appeals Office abused its discretion by determining that the filing of the Federal tax lien was appropriate.

Before, during, and after the conference on June 19, 2008, the settlement officer informed petitioners that they needed to submit a completed and signed Federal income tax return for 2006, among other items, for her to consider collection alternatives and whether to release the recorded lien.

At trial, petitioner testified that petitioners had not filed their 2006 Federal income tax return because the office building fire in 2007 destroyed their business records and that they were going to different banks, vendors, and credit card companies to determine the deductions to report on their 2006 and 2007 Federal income tax returns. At the June 19, 2008, conference the settlement officer suggested that petitioners use the income figures from the IRS tax transcript records to complete a 2006 tax return and then file an amended return once they were able to compute the appropriate deductions. Petitioner stated at trial that "we just chose not to do that" because it would have "resulted in a perjury" to file a tax return that was not true, complete, and accurate, and that without having the figures to claim deductions, the return would be incomplete and inaccurate.

Lack of access to records does not constitute reasonable cause for failing to timely file a tax return. Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982) (taxpayers who do not have access to their records must nevertheless file their tax returns timely using the most accurate estimates available). If necessary, the taxpayer may file an amended return once the records are available or when more accurate information is available. Id. Petitioners' claim that returns based on estimates would be "perjury" has no merit. Perjury involves

deliberately making material false or misleading statements while under oath. Petitioners did not have reasonable cause for failing to file their 2006 tax return. Further, it was not an abuse of discretion for the settlement officer to suggest that petitioners file a 2006 tax return so that a collection alternative and a release of the recorded Federal tax lien could be considered.

In addition to failing to supply the settlement officer with a signed tax return for 2006, petitioners did not submit the additional requested documentation, including collection information statements (Forms 433-A and 433-B) and a formal written request for penalty abatement. The settlement officer warned petitioners that she could not consider their request for an installment agreement without the requested documents. It is not an abuse of discretion for an IRS Appeals conferee to reject collection alternatives and sustain the proposed collection action on the basis of the taxpayer's failure to submit requested financial information. Kendricks v. Commissioner, 124 T.C. 69, 79 (2005); see Cavazos v. Commissioner, T.C. Memo. 2008-257. Accordingly, the settlement officer did not abuse her discretion by not considering an installment agreement.

In sum, nothing in the record justifies a conclusion that the settlement officer abused her discretion, and petitioners have not shown that the IRS Appeals Office's determination to

sustain the filing of the tax lien was arbitrary, capricious, or without sound basis in fact or law.  See <u>Giamelli v. Commissioner</u>, <u>supra</u> at 111.

In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u><br><u>for respondent</u>.