124 T.C. No. 6

UNITED STATES TAX COURT

JUANITA AND EMMANUEL KENDRICKS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3430-03L.               Filed March 9, 2005.

     At the conclusion of a collection due process
hearing (hearing), R's Appeals Office (Appeals)
determined to proceed by levy to collect unpaid
assessments of tax.  Ps ask us to review that
determination.  Among other errors, Ps claim that
Appeals erred in not allowing them to raise at the
hearing the tax liabilities underlying the unpaid
assessments because they had not had the opportunity to
dispute those liabilities in a bankruptcy proceeding
instituted by them.

     1.  <u>Held</u>:  The bankruptcy proceeding instituted by
petitioners afforded them the opportunity to dispute
the underlying liabilities within the meaning of sec.
6330(c)(2)(B), I.R.C., and, as a result, Ps were
precluded from raising those liabilities during the
hearing.

     2.  <u>Held</u>, <u>further</u>, because Ps neither raised
collection alternatives during the hearing nor properly
made an offer in compromise, Appeals did not err in

determining to proceed by levy to collect the unpaid assessments of tax.


Neal Weinberg, for petitioners.

Brianna Basaraba Taylor, for respondent.


OPINION


HALPERN, Judge: This case is before the Court to review determinations made by respondent's Appeals Office (Appeals) that respondent may proceed to collect by levy amounts assessed but unpaid with respect to petitioner Juanita Kendricks's 1982 through 1984 taxable (calendar) years and petitioners Juanita and Emmanuel Kendricks' 1985 taxable (calendar) year (collectively, the unpaid assessments).[1] We review the determinations pursuant to section 6330(d)(1).[2] Petitioners (individually, Mr. or Mrs. Kendricks) assign error to the determinations on the grounds that (1) they did not receive notices of deficiency for the years in issue in time to file a petition in the Tax Court, and, therefore, Appeals should not have denied them the opportunity to

_____

[1] For 1982 through 1984, Mrs. Kendricks made separate returns of income; for 1985 petitioners made a joint return of income. Mr. Kendricks's 1982 through 1984 taxable years are not before us.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

dispute the underlying tax liabilities for those years; (2) Appeals abused its discretion in determining that collection by levy was the most appropriate course of action when petitioners wished to submit collection alternatives and an offer in compromise was pending; and (3) Appeals would not, in connection with petitioners' claims, consider the claims of two nominee corporations (nominees of Mrs. Kendricks), Foxy Investments, Inc., and J & K Trucking Co., Inc. (the nominee corporations). By order dated March 17, 2004, we, in effect, disposed of petitioners' third ground, by granting respondent's motion to dismiss for lack of jurisdiction (and to obtain certain other relief) with respect to the nominee corporations.[3] With respect to petitioners' remaining two grounds, respondent moves for summary judgment in his favor (the motion). Petitioners object.

Rule 121 provides for summary judgment. Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b). When a motion for summary judgment is made and properly

---

[3] We based our order on our finding that the nominee corporations were not persons liable to pay the unpaid assessments and, therefore, were not proper parties to this case.

supported, the adverse party may not rest on mere allegations or denials of the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Rule 121(d).

We are satisfied that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. For the reasons that follow, we shall grant the motion.

Background

Introduction

We draw the following facts from the pleadings and the declaration of respondent's counsel, Brianna Basaraba Taylor, as to (1) the documents contained in respondent's administrative files concerning the hearing accorded petitioners pursuant to section 6330, (2) the documents in respondent's possession concerning petitioners' bankruptcy proceeding, and (3) additional documents in respondent's files relating to petitioners' case. We believe the following facts to be undisputed and so find for purposes of disposing of the motion.[4]

Residence

At the time the petition was filed, petitioners resided in Albany, Ga.

---

[4] All dollar amounts have been rounded to the nearest dollar.

Respondent's Determinations of Deficiencies and Assessments

On March 24, 1995, respondent mailed to petitioners statutory notices of deficiency (notices) determining the deficiencies in, and additions to, tax that underlie the unpaid assessments.  Petitioners failed to petition the Tax Court in response to the notices, and, as a result, respondent assessed the deficiencies and additions to tax that he had determined.

Bankruptcy Case

On September 13, 1996, petitioners filed a voluntary petition in bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. ch. 13 ("Adjustment of Debts of an Individual with Regular Income"), in the United States Bankruptcy Court for the Middle District of Georgia (the bankruptcy case and the bankruptcy court, respectively).  On October 21, 1996, petitioners filed with the bankruptcy court both a Chapter 13 plan and a statement of financial affairs, which listed the Internal Revenue Service (IRS) as a secured creditor with a total claim of $338,571, of which $206,073 was listed as secured.  On October 22, 1996, the IRS filed a claim against petitioners (called a "proof of claim" in bankruptcy parlance) for $428,780, on the basis of unpaid taxes for 1982 through 1985, all of which amount was listed as secured.  On November 14, 1996, petitioners filed an objection to the IRS's proof of claim on the basis "that the claim is not owed", and, on November 15, 1996, petitioners

filed a motion to determine the secured status of the IRS's claim. On December 16, 1996, the bankruptcy court granted petitioners' motion to convert the bankruptcy case from a case under Chapter 13 of the Bankruptcy Code to a case under Chapter 11 of the Bankruptcy Code, 11 U.S.C. ch. 11 ("Reorganization"). Between December 1996 and November 1997, petitioners and the IRS (the bankruptcy parties) engaged in discovery regarding petitioners' objection to the IRS's proof of claim, and, on November 10, 1997, the bankruptcy court entered an order setting petitioners' objection for trial on February 11, 1998. On February 3, 1998, the bankruptcy court entered an order continuing the trial until April 13, 1998. On March 31, 1998, the bankruptcy parties filed a stipulation of dismissal, dismissing without prejudice both petitioners' objection to the IRS's proof of claim and petitioners' motion to determine secured status. On June 5, 2000, the bankruptcy case was dismissed upon motion of the IRS when petitioners did not object.

Notices of Intent To Levy and Right to Hearing

By letter dated October 24, 2001, respondent sent Mrs. Kendricks a notice of intent to levy and a notice of her right to a hearing under section 6330 (a collection due process hearing) with respect to her 1982, 1983, and 1984 tax years, claiming unpaid taxes, penalties, and interest for those years totaling $530,908.

Also by letter dated October 24, 2001, respondent sent petitioners a notice of intent to levy and a notice of their right to a collection due process hearing with respect to their 1985 tax year, claiming unpaid tax, penalties, and interest for that year of $110,676.

Collection Due Process Hearing

On November 20, 2001, respondent received timely requests for collection due process hearings from Mrs. Kendricks for her 1982, 1983, 1984, and 1985 tax years and from petitioners for their 1985 tax year. In attachments to the requests, petitioners state that they dispute the liabilities underlying the unpaid assessments (sometimes, the underlying liabilities) and have not yet had an opportunity to contest those liabilities. They also claim that any levy would cause them hardship.

In response to the requests, on September 18, 2002, petitioners and their counsel were afforded a 2-hour, face-to-face conference with Appeals Officer Allen D. Powell. At the conference, petitioners admitted that they had received the notices but, nevertheless, wished to dispute the underlying liabilities. Appeals Officer Powell informed petitioners that the Internal Revenue Code prohibited them from raising the underlying liabilities when they had received a notice of deficiency or otherwise had an opportunity to dispute the tax liability. Appeals Officer Powell then asked whether petitioners

wished to submit collection alternatives, and petitioners stated that they did not.

On or about September 19, 2002, petitioners submitted an Offer in compromise (offer) to the IRS's centralized offer in compromise unit in New York. The offer related to the unpaid assessments, and the basis of the offer was "doubt as to liability". Petitioners did not provide a copy of the offer to Appeals Officer Powell. By letter dated January 15, 2003, the offer was returned to petitioners by the IRS because it could not be processed in the form submitted. A second offer was submitted by petitioners' counsel to the IRS by facsimile transmission on January 30, 2003.

On January 29, 2003, Appeals sent Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioners' counsel (the notices of determination). The summary of determinations section of each of those notices of determination states:

> During Appeals consideration of your case, you were informed that you could not raise the issue of your tax liability because you had an opportunity to dispute the issue and failed to do so. No collection alternatives were explored because you chose not to submit financial information to evaluate the collection alternatives.

The section concludes:

> Appeals has obtained verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met, considered any relevant issues relating to the unpaid tax raised at the hearing, and taken into

consideration whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. Therefore, it is the determination in this case [that] the proposed levy action is sustained.

On March 3, 2003, petitioners filed the petition.

## Discussion

### I. Collection Due Process

If any person liable for Federal tax liability neglects or refuses to make payment within 10 days of notice and demand, the Commissioner is authorized to collect the tax by levy on that person's property. See sec. 6331(a). As a general rule, at least 30 days before taking such action, the Commissioner must provide the person with a written final notice of intent to levy that describes, among other things, the administrative appeals available to the person. See sec. 6331(d).

Upon request, the person is entitled to an administrative review hearing before Appeals. Sec. 6330(b)(1). The Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). Section 6330(c)(2) prescribes the relevant matters that a person may raise at the Appeals hearing, including spousal defenses, the appropriateness of respondent's proposed collection action, and possible alternative means of collection. A taxpayer may contest the existence or amount of the underlying tax liability at an Appeals Office hearing if the taxpayer did

not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B).

Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the collection action "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). We have jurisdiction to review such determinations where we have jurisdiction over the type of tax involved in the case. Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004). Where the underlying tax liability is properly at issue, we review the determination de novo. E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not properly at issue, we review the determination for abuse of discretion. Id. at 182. When faced with questions of law, as we are here (e.g., determining whether the bankruptcy proceeding instigated by petitioners afforded petitioners the opportunity to dispute the tax liability), the standard of review makes no difference. Whether characterized as a review for abuse of discretion or as a consideration "de novo" (of a question of law), we must reject erroneous views of the law. See Cooter &

Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990); Abrams v. Interco, Inc., 719 F.2d 23, 28 (2d Cir. 1983) (stating that it is not inconsistent with the abuse of discretion standard to decline to honor a purported exercise of discretion that is infected by an error of law); Swanson v. Commissioner, 121 T.C. 111, 119 (2003).

II. Arguments of the Parties

Respondent argues that summary judgment is appropriate because the bankruptcy files and the administrative files concerning the collection due process hearing (the hearing files) are not in dispute and establish the material facts of the case, so that a decision may be rendered as a matter of law. Respondent claims that petitioners are precluded from challenging the underlying liabilities because they had a prior opportunity to dispute those liabilities and that, given petitioners' failure to present collection alternatives or the offer to Appeals, Appeals did not abuse its discretion in deciding that the proposed levy should be sustained.

Petitioners argue that summary judgment is not appropriate because, among other things, there are material issues of fact in this case, viz, whether petitioners received the notices in time to file petitions with the Tax Court and whether the bankruptcy case presented an adequate opportunity to dispute the underlying liabilities. Petitioners concede that collection alternatives

were not raised at the conference they had with Appeals Officer Powell on September 18, 2002, but deny that they had a collection due process hearing because they were not allowed to challenge the underlying liabilities.  Finally, petitioners argue that there is an offer in compromise pending with respect to those liabilities.

III.  Discussion

A.  Material Issues of Fact

There is no dispute with respect to the bankruptcy files and the hearing files.  Those files establish most of the facts material to this case.  Because petitioners argue that, although they received the notices, they did not receive them in time to petition the Tax Court, respondent does not rely on receipt of the notices as the reason petitioners were precluded at their conference with Appeals Officer Powell from raising challenges to their liabilities for the unpaid assessments.  Rather, respondent relies on the opportunity presented to petitioners by the bankruptcy case to dispute those liabilities.  Since the relevant facts with respect to the bankruptcy case are not in dispute, we are faced with the question of whether, as a matter of law, the bankruptcy case presented petitioners the opportunity to dispute the underlying liabilities.  We need make no finding as to when petitioners received the notices.

B.  <u>The Bankruptcy Case</u>

While we have yet to consider whether, when the IRS submits a proof of claim for an unpaid Federal tax liability in a taxpayer's bankruptcy action, the taxpayer has the opportunity to dispute the liability, within the meaning of section 6330(c)(2)(B), at least two other courts have answered that question in the affirmative.  <u>Johnson v. United States</u>, 92 AFTR 2d 2003-7233, 2003-2 USTC par. 50721 (N.D. Ga. 2003); <u>PCT Servs., Inc. v. United States</u>, 92 AFTR 2d 2003-5234, 2003-2 USTC par. 50536 (N.D. Ga. 2003); <u>Triad Microsystems, Inc. v. United States</u>, 90 AFTR 2d 2002-7332, 2003-1 USTC par. 50106 (E.D. Va. 2002).  We agree with those courts.

When the IRS submits a proof of claim for unpaid Federal tax liabilities in a taxpayer's bankruptcy proceeding, the taxpayer and trustee may object to the IRS's proof of claim.  Under 11 U.S.C. sec. 505(a), a bankruptcy court may, with certain restrictions, determine: "the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."  We think that, when the procedure described provides the taxpayer the opportunity to object to the IRS's proof of claim for an unpaid Federal tax liability, the taxpayer is afforded an opportunity to

dispute the liability, as contemplated by Congress in section 6330(c)(2)(B).

In the bankruptcy case, petitioners did in fact file an objection to the IRS's proof of claim, as well as a motion to determine the secured status of the IRS's claim. They were accorded discovery against the IRS for a period of approximately 11 months. Before the hearing scheduled to hear the objection was held, however, petitioners stipulated to the dismissal without prejudice of the objection to the IRS's proof of claim and the motion to determine secured status of the IRS's claim. Clearly, petitioners had the opportunity to dispute the underlying liabilities.[5] Petitioners' argument that they did not

---

[5] Since the bankruptcy court did not allow the IRS's proof of claim, the doctrine of res judicata does not apply to the underlying liabilities. Where a bankruptcy court has allowed a tax claim, the doctrine of res judicata bars relitigation of the underlying tax liability in this court. Fla. Peach Corp. v. Commissioner, 90 T.C. 678 (1988) (dismissal of bankruptcy proceeding did not vacate judgment allowing tax claims; effect of judgment was res judicata); Strong v. Commissioner, T.C. Memo. 2001-103 (allowance of tax claim by bankruptcy court was res judicata). Sec. 6330(c)(2)(B), while overlapping the doctrine of res judicata, see Wooten v. Commissioner, T.C. Memo. 2003-113, is a broader prohibition because, for one thing, it prohibits a taxpayer from raising in a collection due process hearing (and in any resulting court review under sec. 6330(d)(1)) her underlying tax liability if she failed to file a deficiency suit in response to a timely received notice of deficiency. A taxpayer who so defaults is no more prevented by res judicata from suing for a tax refund than are petitioners on account of the bankruptcy case's being dismissed without any adjudication of the IRS proof of claim. It may well be that the policy behind sec. 6330(c)(2)(B) is to consign to a refund suit a taxpayer who forgoes a prepayment forum, be it the Tax Court (in a deficiency
(continued...)

have an "adequate" opportunity to challenge the IRS's proof of claim, because they did not have access to records that had been seized by the IRS during its criminal investigation of Mrs. Kendricks, and never returned to them, is to no avail.  With respect to the burden of proof in connection with tax claims in bankruptcy cases, the rule is that, in the absence of modification expressed in the Bankruptcy Code, the burden of proof with respect to a tax claim in bankruptcy remains where the substantive tax law puts it.  Raleigh v. Ill. Dept. of Revenue, 530 U.S. 15, 26 (2000).  The Bankruptcy Code makes no provision for altering the burden of proof with respect to a tax claim, id. at 22, and, in general, where the Commissioner has determined a deficiency in tax, the taxpayer bears the burden of proving facts that show that determination to be incorrect, see Rule 142. Welch v. Helvering, 290 U.S. 111, 115 (1933); Feldman v. Commissioner, 20 F.3d 1128, 1132 (11th Cir. 1994), affg. T.C. Memo. 1990-532.  Under the Federal Rules of Evidence, "the inability to produce a record which is unintentionally lost,

---

5(...continued)
suit) or the bankruptcy court (where the action is dismissed without resolving the IRS's claims).  See Aquirre v. Commissioner, 117 T.C. 324, 327 (2001).  But cf. Montgomery v. Commissioner, 122 T.C. 1, 9 (2004) (sec. 6330(c)(2)(B) permitted taxpayers to challenge the existence or amount of the tax liability reported on their original income tax return because they had not received a notice of deficiency for the year in question and they had not otherwise had an opportunity to dispute the tax liability in question).

whether by the petitioner, the Commissioner, or by a third party, alters the type of evidence which may be offered to establish a fact, but the rule does not affect the burden of proving a fact." Fed. R. Evid. 1004; Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979). Petitioners do not claim that their tax records were intentionally lost. In the course of the bankruptcy case, they had approximately 11 months to conduct discovery, and any relief that they thought they deserved on account of the absence of their records they could have requested from the bankruptcy court. We see no merit to their claim that they had an inadequate opportunity to challenge the IRS's proof of claim.

C. No Abuse of Discretion

In response to their requests for collection due process hearings, petitioners and their counsel were afforded a 2-hour, face-to-face conference with Appeals Officer Powell. Petitioners complain that the conference did not amount to a proper hearing because they were not allowed to raise the underlying liabilities. Since they had no right to raise the underlying liabilities, that complaint is without merit. Petitioners argue that the Appeals Office abused its discretion by issuing the notices of determination while an offer in compromise was pending. Apparently, petitioners did submit an offer in compromise to someone at the IRS, but not to the Appeals Office conducting their collection due process hearing. Moreover, that

offer was returned to petitioners as not processable in the form submitted. A second offer (we assume corrected) was sent to the IRS the day after the notices of determination were sent. Since there was no offer in compromise before Appeals, there was no abuse of discretion in Appeals' failing to consider an offer in compromise. Finally, petitioners can raise no issue here that they did not raise during their collection due process hearing. See Magana v. Commissioner, 118 T.C. 488, 493 (2002); secs. 301.6320-1(f)(2), Q&A-F5, and 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.

D. Conclusion

Petitioners have failed to show any error in Appeals' determination to proceed to collect by levy the unpaid assessments.

IV. Conclusion

As stated, we shall grant the motion.

An appropriate order and decision will be entered for respondent.